## BRAINARD *v.* EVENING POST ASS'N.

(*Circuit Court, D. Connecticut.*   February 14, 1884.)

PATENT—PREVIOUS STATE OF THE ART—COPY—DISTRIBUTOR.

Letters patent No. 149,092, for an improved galley-holder, designed to facilitate the orderly assortment of compositors' copy, are invalid for want of patentable novelty in the invention.

In Equity.
*Chas. Rollin Brainard,* for plaintiff.
*Wm. Edgar Simonds,* for defendant.

SHIPMAN, J.   This is a bill in equity for relief against the alleged infringement of letters patent to Charles Rollin Brainard, No. 149,-092, dated March 31, 1874, for an improvement in compositors' copy distributors.   The plaintiff is the owner of the patent.

The invention is described in the specification as follows:

"My invention   *   *   *   consists in a galley-holder provided with a series of compartments and pins or hooks, correspondingly lettered or numbered, as hereinafter more fully set forth, the object being to keep the copy properly assorted, thus greatly facilitating and reducing the expense of proof-reading. *   *   *   It is well known to all practical printers and proof-readers that, as the compositors empty their matter into the different galleys on the stand, the copy is usually deposited into a common receptacle, without regard to the nature of the article or the order of setting.   From this receptacle the proof-reader is obliged to hunt up or select the copy corresponding with his proof, frequently causing much confusion and delay when time is very important, especially when the 'takes' are small.   In the drawing it is an ordinary galley-stand, or holder, provided with compartments or slips, lettered in regular order from A to M.   Disposed in the upper part of the stand are a series of pins or hooks or copy-holders, lettered to correspond with the compartments.   *   *   *   When the compositor goes to the 'bank' or 'dump' to empty matter, instead of depositing his copy in a drawer, it is impaled on the pin or hook in the stand corresponding with the slip in which the galley is located.   *   *   *"

The claim is for "the copy-distributer described, consisting of the galley-holder, N, provided with compartments for galleys, and pins or hooks for copy, correspondingly lettered, substantially as and for the purpose specified."   The important question in the case is that of patentability.   To determine this question, a knowledge of the exact relation which the invention bore to the previous state of the art is necessary.   The case of *Brainard* v. *Pulsifer,* 7 FED. REP. 349, was tried before Judge LOWELL upon the patent and a "short stipulation as to the state of the art and the thing which the defendants use."   So much of the stipulation as related to the history of the art is as follows:

"It is further stipulated and agreed that, prior to the grant of the complainant's patent, it was customary to conduct the business of sorting copy in daily newspaper printing offices substantially as follows: 'The copy was

cut in suitable lengths, called, technically, 'takes,' and distributed in order to the compositors in the office. When a compositor had set up his 'take' he deposited the type set up by him on a galley upon the galley-bank, and deposited the copy from which he had set up the type in a drawer, or box, or upon a table or shelf, or other receptacle, for the proof-reader.' "

When proofs were submitted to the proof-reader for correction he was also furnished with the "copy," procured from the receptacle on or in which it had been placed.

Upon this state of facts Judge LOWELL sustained the patent, and it seems to me that there was no reason for a different conclusion.

But it is now clearly shown that the New York *Sun* office, in 1868, and thereafter, and before the date of the patented invention, used the following system: There was placed over the dumping galley a series of lettered hooks, which were lettered to correspond with the letters which, by the custom of the office, were uniformly placed upon the different classes of matter to be put in type. The "takes" or small pieces of copy were marked with their appropriate letter and were numbered in numerical order and were given to the compositors, each of whom placed his matter, when in type, upon a galley in the galley-bank, and marked it with a tag to correspond with the letter and number on his copy, and placed his copy on the hook which contained the appropriate letter. Sometimes, instead of the tags, the galleys were chalked with a letter to indicate where the copy containing the letters was placed.

In the Waterbury *American* office, for the greater part of the time between 1868 and 1872, there was a system of lettered hooks and spindles over the galley-bank, the letters or words indicating the character of the copy to be placed on each hook. Copy was placed upon the respective hooks, was taken therefrom by the compositors, and when set in type was returned to the spindle and the type was placed upon the galleys, which, though not designated, were "understood, as a rule of the office, to correspond respectively with the copy hooks and holders."

It thus appears, especially by the testimony from the *Sun* office, that separate hooks for the reception of copy, correspondingly lettered with the letters placed upon the copy, and designated upon the type when placed in the galley, were used, and thus the delay from having to search through a large pile of copy for the needed slip was avoided.

The improvement of the patentee consisted in having lettered hooks to correspond with lettered galleys. When the art had arrived at lettering a series of hooks to correspond with the letters systematically placed upon the copy, and marked upon the type when placed in the galley, there does not seem to me to have been any invention in permanently lettering the galley to correspond with the lettering upon the hooks. The only advance upon the simple system of the comparatively small Waterbury *American* office was the en-

largement of the system so as to adapt it to the needs of a much larger newspaper, by the use of a greater number of lettered hooks, and the lettering of the galleys instead of their being designated by rule of the office and in the memory of the compositor.

The description of the invention which was given by the patentee upon his cross examination is as follows:

"When the compositor has emptied his type on the galley, he is instructed, by my invention, 149,092, to deposit his copy on a receptacle corresponding to the galley where his matter is, or corresponding to the take-mark on his copy and thereby keep the copy for that galley or article distinct and separate from all other copy or matter, for the more immediate convenience of the proof-reader, and without the labor usually entailed on a copy-sorter."

The invention thus described was substantially used in the *Sun* office, and the patented improvement was a convenient modification of, but not a substantial advance upon, the *Sun's* system.

Believing that the invention was not patentable, I have not examined the question of infringement.

The bill is dismissed.